United States District Court
Southern District of Texas

**ENTERED**

May 24, 2016

David J. Bradley, Clerk

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| BRANDON TREVELLE CAINES, | § | |
| | § | |
| *Petitioner*, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-15-2494 |
| | § | |
| LORIE DAVIS, | § | |
| | § | |
| *Respondent*. | § | |

### MEMORANDUM OPINION AND ORDER

Petitioner, a state inmate proceeding *pro se*, filed this section 2254 habeas petition challenging his two convictions and 75-year sentences for felony murder. Respondent filed a motion for summary judgment on March 23, 2016 (Docket Entry No. 13), serving petitioner a copy at his address of record that same day. Despite expiration of a reasonable period of time of sixty days, petitioner has failed to respond to the motion.

Based on careful consideration of the pleadings, the record, the motion, and the applicable law, the Court GRANTS the motion for summary judgment and dismisses this lawsuit for the reasons shown below.

### *Background and Claims*

Petitioner was found guilty of two charges of felony murder with a deadly weapon in 2011, and sentenced to 75 years' imprisonment on each conviction. The convictions were affirmed on appeal. *Caines v. State*, Nos. 14–11–00912–13–CR (Tex. App.–Houston [14th

Dist.] 2011, no pet.).  Petitioner did not pursue discretionary review.  His applications for

state habeas relief were denied in 2015.

Petitioner claims that trial counsel was ineffective in the following three instances:

1.      Counsel's incorrect advice caused him to reject a 30-year plea offer.

2.      Counsel failed to investigate the facts and the law.

3.      Counsel failed to present critical defense evidence.

Respondent argues that these claims are without merit.

*Factual Background*

In its opinion affirming petitioner's convictions on direct appeal, the intermediate state

court of appeals set forth the following statement of facts:

[Petitioner] was charged by separate indictments with two felony-murder
offenses arising out of a vehicle accident that killed two people. The
indictment for each offense alleges the following conduct by [petitioner] on
December 4, 2009, causing the deaths of each of the two complainants:

unlawfully, intentionally, and knowingly commit[ting] the
felony offense of unauthorized use of a motor vehicle by
operating a motor-propelled vehicle, namely an automobile
owned by Mary Ann Martin, without the effective consent of
Mary Ann Martin, and while in the course and furtherance of the
commission of and the immediate flight from the commission of
said offense commit[ting] an act clearly dangerous to human
life, to-wit:  speeding and failure to maintain a proper lookout
and thereby caus[ing] the death of [the two complainants].

The indictments alleged the use of a deadly weapon, the motor vehicle, during
the commission of and during the immediate flight from the offenses of felony
murder.  [Petitioner] pleaded "not guilty" to each of the charged offenses and
proceeded to trial; the offenses were tried together.

At trial, witnesses testified to observing a vehicle, a Buick LeSabre, traveling at a high rate of speed.  According to the record, the Buick collided with another vehicle, a Ford Mustang, ultimately killing the two occupants of the Mustang.  The collision occurred around 6:30 a.m. on December 4, 2009.  It is undisputed that [petitioner] was the sole occupant and driver of the Buick. An officer on the scene who witnessed the collision opined that [petitioner] had been operating the Buick in a manner dangerous to human life.

In the course of the ensuing investigation, officers discovered that the Buick was stolen.  The vehicle belonged to Mary Ann Martin, whose home was five miles from the scene of the collision.  The record reflects that on the morning of the collision, Martin's son started the vehicle for her and went back inside his home, leaving the vehicle running to allow it to warm up.  The Martins discovered the vehicle was missing at 6:20 a.m. and notified authorities that it had been stolen.  Martin testified that she did not know [petitioner] and that [petitioner] did not have consent to use her vehicle.

Data from the vehicle reflects the Buick was traveling at a speed of over eighty miles per hour at the moment of impact on a stretch of roadway zoned for forty miles per hour.  Data from the vehicle reflects that [petitioner] traveled in excess of ninety miles per hour in the seconds before the impact.  An accident-reconstruction expert opined that operating a vehicle at those speeds was an act dangerous to human life and that the Buick, when operated at that speed, was capable of causing death or serious bodily injury.  Another accident-reconstruction expert faulted [petitioner] for causing the collision by operating the Buick at excessive speeds.  According to the record, [petitioner] applied brakes just one second before the accident occurred.  Although it snowed later that day, the road conditions were dry at the time of the accident.

The trial court's jury charge tracked the language of the indictments.  The jury found [petitioner] guilty of both of the charged offenses and found that [petitioner] used or exhibited a deadly weapon, a motor vehicle, during the commission of each offense or during the immediate flight therefrom.  The trial court sentenced [petitioner] to seventy-five years' confinement for each offense and ordered the sentences to run concurrently.

*Caines*, at *1–2.

*Legal Standards*

*Habeas Review*

This petition is governed by the applicable provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). 28 U .S.C. § 2254. Under the AEDPA, federal habeas relief cannot be granted on legal issues adjudicated on the merits in state court unless the state adjudication was contrary to clearly established federal law as determined by the Supreme Court, or involved an unreasonable application of clearly established federal law as determined by the Supreme Court. *Harrington v. Richter*, 562 U.S. 86, 98–99 (2011); *Williams v. Taylor*, 529 U.S. 362, 404–05 (2000); 28 U.S.C. §§ 2254(d)(1), (2). A state court decision is contrary to federal precedent if it applies a rule that contradicts the governing law set forth by the Supreme Court, or if it confronts a set of facts that are materially indistinguishable from such a decision and arrives at a result different from the Supreme Court's precedent. *Early v. Packer*, 537 U.S. 3, 7–8 (2002).

A state court unreasonably applies Supreme Court precedent if it unreasonably applies the correct legal rule to the facts of a particular case, or unreasonably extends a legal principle from Supreme Court precedent to a new context where it should not apply, or unreasonably refuses to extend that principle to a new context where it should apply. *Williams*, 529 U.S. at 409. In deciding whether a state court's application was unreasonable, this Court considers whether the application was objectively unreasonable. *Id*. at 411. "It bears repeating that even a strong case for relief does not mean the state court's contrary

conclusion was unreasonable." *Richter*, 562 U.S. at 102.  As stated by the Supreme Court

in *Richter*,

> If this standard is difficult to meet, that is because it was meant to be.  As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings.  It preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents.  It goes no farther.  Section 2254(d) reflects the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal.

*Id.*, at 102–03 (emphasis added; internal citations omitted).

The AEDPA affords deference to a state court's resolution of factual issues.  Under

28 U.S.C. § 2254(d)(2), a decision adjudicated on the merits in a state court and based on a

factual determination will not be overturned on factual grounds unless it is objectively

unreasonable in light of the evidence presented in the state court proceeding.  *Miller–El v.*

*Cockrell*, 537 U.S. 322, 343 (2003).  A federal habeas court must presume the underlying

factual determination of the state court to be correct, unless the petitioner rebuts the

presumption of correctness by clear and convincing evidence.  28 U.S.C. § 2254(e)(1); *see*

*also Miller–El*, 537 U.S. at 330–31.

> *Summary Judgment*

In deciding a motion for summary judgment, the district court must determine whether

the pleadings, discovery materials, and the summary judgment evidence show that there is

no genuine issue as to any material fact and that the moving party is entitled to judgment as

a matter of law.  FED. R. CIV. P. 56(c).  Once the movant presents a properly supported motion for summary judgment, the burden shifts to the nonmovant to show with significant probative evidence the existence of a genuine issue of material fact.  *Hamilton v. Segue Software, Inc*., 232 F.3d 473, 477 (5th Cir. 2000).

While summary judgment rules apply with equal force in a section 2254 proceeding, the rules only apply to the extent that they do not conflict with the federal rules governing habeas proceedings.  Therefore, section 2254(e)(1), which mandates that a state court's findings are to be presumed correct, overrides the summary judgment rule that all disputed facts must be construed in the light most favorable to the nonmovant.  Accordingly, unless a petitioner can rebut the presumption of correctness of a state court's factual findings by clear and convincing evidence, the state court's findings must be accepted as correct by the federal habeas court.  *Smith v. Cockrell*, 311 F.3d 661, 668 (5th Cir. 2002), *overruled on other grounds by Tennard v. Dretke*, 542 U.S. 274 (2004).

*Analysis*

The Sixth Amendment to the United States Constitution guarantees a criminal defendant the right to the effective assistance of counsel.  U.S. CONST. amend. VI.  A federal habeas corpus petitioner's claim that he was denied effective assistance of counsel is measured by the standards set out in *Strickland v. Washington*, 466 U.S. 668 (1984).  To assert a successful ineffectiveness claim, a petitioner must establish both constitutionally deficient performance by counsel and actual prejudice as a result of counsel's deficient

performance.  *Id.* at 687.  The failure to demonstrate either deficient performance or actual prejudice is fatal to an ineffective assistance claim.  *Green v. Johnson*, 160 F.3d 1029, 1035 (5th Cir. 1998).

A counsel's performance is deficient if it falls below an objective standard of reasonableness.  *Strickland*, 466 U.S. at 688.  In determining whether counsel's performance was deficient, judicial scrutiny must be highly deferential, with a strong presumption in favor of finding that trial counsel rendered adequate assistance and that the challenged conduct was the product of a reasoned trial strategy.  *West v. Johnson*, 92 F.3d 1385, 1400 (5th Cir. 1996). To overcome this presumption, a petitioner must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment.  *Wilkerson v. Collins*, 950 F.2d 1054, 1065 (5th Cir. 1992).  However, a mere error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment.  *Strickland*, 466 U.S. at 691.

Actual prejudice from a deficiency is shown if there is a reasonable probability that, but for counsel's unprofessional error, the result of the proceeding would have been different. *Id.* at 694.  To determine prejudice, the question focuses on whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair. *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993).  In that regard, unreliability or unfairness does not result if the ineffectiveness does not deprive the petitioner of any substantive or procedural right to which he is entitled.  *Id.*

Petitioner contends in his first and second claims that counsel gave him incorrect legal advice that resulted in his rejecting the State's 30-year plea bargain offer. According to petitioner, counsel failed to investigate the facts and law and erroneously told him that intoxication was a defense to the mental state required to prove the underlying felonies.

In responding to these claims on collateral review, trial counsel submitted an affidavit in which he testified as follows:

> On July 18, 2010 I wrote Mr. Caines a letter and set out what I believed to be the state of negotiations to resolve his case at that time. I noted that at that time Mr. Caines had rejected what I believed to have been an offer of 18 years in prison and an offer of 20 years in prison. Mr. Caines had rejected those offers up until that time and they had been withdrawn. I asked Mr. Caines for authority to re-solicit the 20 year offer. Mr. Caines declined to authorize any agreement except probation or possibly 5-10 years. I always advised Mr. Caines to accept a plea agreement prior to the State's alerting me that they would seek indictments for felony murder. I advised Mr. Caines that I believed a judge would sentence him to a substantial amount of time exceeding any offer the state would make. The final plea bargain offered by the state was offered on the record in open court. After I wrote Mr. Caines and the case was in fact indicted for felony murder, the state offered Mr. Caines 30 years in prison. On January 30, 2011, I visited Mr. Caines in jail and again outlined his options. I advised him to accept the state's offer of 30 years in prison. I explained that he had the option to plead to the judge without an agreed recommendation but that I believed punishment by any judge would exceed the state's offer. The state made what I believed to be a final offer in open court on the record. Mr. Caines refused that offer and the case was set for trial.
>
> Mr. Caines reasons for rejecting the plea offer was that he did not mean to hurt anyone, that he had children of his own and would never do that. He also claimed that he did not steal the car, someone else was driving the car and that he might take 5-10 years for "being there." The evidence that Mr. Caines was driving the car shortly after it was stolen and shortly before it collided with the complainants was overwhelming and I advised him to accept the offer.

My best recollection is that the state's final offer of thirty years was withdrawn when Mr. Caines rejected the offer at the final pretrial conference when the case was set for trial. I do not know if the judge has a policy regarding whether she would accept a plea bargain offer after the final admonition of the defendant prior to trial. The judge did communicate to my client that the state was withdrawing its final offer that day if it was not accepted and admonished the defendant that this may well be his final chance to accept a plea bargain. Mr. Caines rejected every entreaty to make a plea bargain and did not authorize me to make any counter-offers which would likely be accepted by the state.

Counsel was assisted by Joe Patillo, a private investigator, who made efforts to locate a person described by Mr. Caines who Mr. Caines claimed, actually stole and drove the car. Mr. Patillo could not develop any information on the person and advised Mr. Caines that even if we were to locate the person he described it would be unlikely that we would gain any information which would help Mr. Caines defend the accusations. There was no evidence tending to corroborate Mr. Caines' version of events, particularly that there was any one else in the car at the time of the collision. I also discussed locating this person with defendant's family, his mother and stepfather.

Although I was in communication with his mother throughout the proceedings, I never had any other information to corroborate whether the person described by Mr. Caines existed. Mr. Caines described the person as Marquise who "hung out at the corner store." However, based on the other evidence, particularly the vantage point of the police officer who was an eyewitness to the collision and the magnitude of the collision itself, it would have been impossible to convince a fact-finder that another person could have escaped the automobile collision without being observed.

I reviewed the crash collision evidence in detail and discussed the evidence collision data informally with an expert reconstructionist. However, there was no evidence of anything beyond human agency that caused the collision. I examined all of the photographs and visited the scene. Mr. Patillo interviewed and reported to me statements of witnesses who might be able to help with mitigation and character evidence. Mr. Patillo also collected more evidence from the client regarding the other person the client claimed was present. I visited the scene to observe and photograph for myself the vantage points of witnesses. I reviewed all of the verified witness statements. I attempted to

seek out eye witnesses and interview them but was unsuccessful. I interviewed Mr. Caines on his version of what happened but was unable to square his account with the evidence available from other sources.

On July 18, 2011, I wrote Mr. Caines a detailed account of the law applicable to his case, including the danger that the intoxication manslaughter cases with which he was then charged could be ordered to run consecutively, his ineligibility for probation from a jury should the state indict him for felony murder and my conclusion that the threatened felony murder indictment was an easier case to prove against him than intoxication manslaughter. I reviewed the case law on felony murder and decided that the only defense to felony murder under the circumstances facing Mr. Caines was to convince the fact finder that speeding, at that time of day, with a lack of traffic was not an act clearly dangerous to human life and the collision was just an accident, whether or not the accident occurred while Mr. Caines was driving a stolen car. If the act was not clearly dangerous to human life then it was not felony murder. However, I advised Mr. Caines that I thought that the state could prove that his speed alone could be found to be an act clearly dangerous to human life under the circumstances. I advised Mr. Caines that I did not believe the defensive theories I proposed would be enough to sway a jury and the result of a trial would be conviction. If we presented evidence of intoxication it would have involved evidence of intoxication by reason of voluntary or unknowing (involuntary) ingestion of Phencyclidine [PCP]. Mr. Caines never claimed to anyone that he was unknowingly drugged. We had no evidence of involuntary intoxication. There were some hospital pictures of Mr. Caines after the collision which may have offered evidence of his intoxication but they also made Mr. Caines appear to be uncaring, even nonchalant about the circumstances.

The defensive theory that his actions were not "clearly dangerous" had no chance at all to succeed if we relied on or introduced a theory that Mr. Caines' intoxication contributed to the collision. First, voluntary intoxication is not a defense to liability. Second, Mr. Caines did not tell me he was intoxicated at all. He offered a detailed albeit unverifiable chronology of the events that took place which involved another person as driver of the car. Lastly, in my judgment, intoxication by reason of ingestion of PCP is an aggravating, not a mitigating factor. Reliance on intoxication, especially involving PCP would serve to aggravate rather than mitigate what was a long shot, at best, defensive theory.

10

*Ex parte Caines*, pp. 1–5 (affidavit of trial counsel).

In rejecting petitioner's claims of ineffective assistance, the state trial court made the following relevant findings of fact on collateral review:

14.   The Court finds the affidavit of [trial counsel] to be credible and the facts stated therein to be true.

15.   The Court finds, based on the affidavit of [trial counsel], that [trial counsel] reviewed the case law on felony murder and decided that the only defense to felony murder under the circumstances was to convince the fact finder that speeding was not an act clearly dangerous to human life and the collision was just an accident.

16.   The Court finds, based on the affidavit of [trial counsel] that [trial counsel] advised the applicant that [trial counsel] thought that the State could prove that his speed alone could be found to be an act clearly dangerous to human life under the circumstances.

17.   The Court finds, based on the affidavit of [trial counsel], that he did not believe the defensive theories [trial counsel] proposed would be enough to sway a jury and that a trial would result in a conviction.

18.   The Court finds, based on the affidavit of [trial counsel], that [trial counsel] advised the applicant to accept the State's plea offer of thirty (30) years in prison.

19.   The applicant's claim that he would have accepted the State's thirty (30) year plea offer but for [trial counsel's] advi[c]e that their defense would prevail at a jury trial is not credible.

20.   The Court finds, based on the affidavit of [trial counsel], that there was no evidence of involuntary intoxication.

21.   The Court finds, based on the affidavit of [trial counsel], that based on the evidence, it would have been impossible to convince a fact-finder that another person could have escaped the automobile collision without being observed.

22.    The Court finds, based on the affidavit of [trial counsel], that [trial counsel] was unable to square [petitioner's] version of events with the evidence available from other sources.

*Id.*, pp. 10–11.  The state trial court also made the following relevant conclusions of law:

1.    The applicant fails to show that trial counsel's performance was deficient.

2.    The applicant fails to show that trial counsel's alleged deficient performance prejudiced the defense.

3.    In all things, the applicant fails to show that he was denied effective representation of trial counsel.

*Id.*, p. 11.  The Texas Court of Criminal Appeals relied on these findings of fact and conclusions of law in denying habeas relief.  *Id.*, at cover.

To establish prejudice in the plea-bargaining process, "a defendant must show the outcome of the plea process would have been different with competent advice."  *Lafler v. Cooper*, __ U.S. ___, 132 S. Ct. 1376, 1384 (2012).  Where counsel's erroneous advice causes a petitioner to reject a plea-bargain offer and stand trial, the petitioner must demonstrate a reasonable probability that (1) he would have accepted the earlier offer if counsel had not given ineffective assistance; (2) the prosecution would not have withdrawn the offer; and (3) the trial court would not have refused to accept the plea bargain. *Id.*, at 1385.

Here, the state trial court rejected petitioner's claims that counsel had failed to properly investigate the law or facts of the case, or that counsel gave petitioner erroneous

12

advice.  The state trial court further found not credible petitioner's assertions that he would have accepted the 30-year plea offer but for counsel's allegedly erroneous advice.  To the contrary, the court found credible trial counsel's affidavit testimony that he had advised petitioner to accept the offer, but that petitioner refused.  Petitioner's bald disagreements with these findings and conclusions and with the state court's determinations are insufficient to meet his burden of proof under AEDPA, and do not entitle him to habeas relief.

Petitioner also claims that trial counsel was ineffective in failing to present "critical" defense evidence; that is, petitioner complains that trial counsel should have presented evidence on the "involuntary intoxication" and "third party" defenses.  However, as trial counsel clearly stated in his affidavit, there was no evidence to submit to the jury under a defense theory of involuntary intoxication, and petitioner provides nothing to the contrary.  Nor does petitioner present to the Court any probative evidence that a "third party" was driving the vehicle at the time of the offense.  The state trial court expressly found that there was no evidence of involuntary intoxication, and that it would have been impossible to convince a jury that there was an unseen "third party."   Again, petitioner's conclusory allegations are insufficient to meet his burden of proof in this proceeding, and he establishes neither deficient performance nor actual prejudice under *Strickland*.

The state court denied relief on petitioner's ineffective assistance claim.  Petitioner fails to show that the state court's determination was contrary to, or involved an unreasonable application of, *Strickland* or was an unreasonable determination of the facts based on the

evidence in the record.  No basis for habeas relief is shown, and respondent is entitled to summary judgment dismissal of petitioner's claim.

*Conclusion*

Respondent's motion for summary judgment (Docket Entry No. 13) is GRANTED and this lawsuit is DISMISSED WITH PREJUDICE.  A certificate of appealability is DENIED.  Any and all pending motions are DENIED AS MOOT.

Signed at Houston, Texas on May 24, 2016.

Gray H. Miller
United States District Judge

14